IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SHANNON SELLERS     PLAINTIFF

v.     CIVIL ACTION NO. 3:23-CV-432-SA-JMV

US BEVERAGE PACKERS, LLC     DEFENDANTS

ORDER AND MEMORANDUM OPINION

Shannon Sellers initiated this lawsuit when she filed her Complaint [2] asserting claims for negligence, products liability, and breach of warranties against US Beverage in the Circuit Court of Lafayette County, Mississippi. US Beverage removed the case to this Court, premising federal jurisdiction upon 28 U.S.C. § 1332. Sellers later filed an Amended Complaint [29], but she still asserts the same three causes of action.

On January 28, 2025, the Court entered an Order and Memorandum Opinion [163] denying US Beverage's request for summary judgment. Since that time, US Beverage has filed a Motion for Judgment on the Pleadings and Partial Summary Judgment [165]. That Motion [165] is ripe for review. Having considered the filings and the applicable authorities, the Court is prepared to rule.

*Relevant Background*[1]

On April 30, 2023, Sellers' then-boyfriend (now husband) Luis Ortiz purchased a can of Arizona Arnold Palmer Lite from a gas station in Oxford, Mississippi. Ortiz placed the can in Sellers' refrigerator so that she could take it to work with her the next day.

The following morning, Sellers took the can with her to her job on campus at the University of Mississippi. At the start of her weekly department meeting, Sellers opened the can. After consuming the beverage, Sellers discovered two dead mice in the bottom of the can. Sellers became

---

[1] Much of this factual recitation mirrors the recitation in the Court's prior Order and Memorandum Opinion [163].

sick, exited the meeting, and immediately sought medical attention. Other individuals attending the meeting looked inside the can and saw the mice, and one of Sellers' co-workers, Brad Noel, took a video of the mice in the can.

US Beverage is engaged in the business of manufacturing, bottling, packaging, and distributing Arizona Arnold Palmer Lite. In her Amended Complaint [28], Sellers seeks to hold US Beverage liable on claims of negligence, products liability, and breach of warranties.

In its prior Order and Memorandum Opinion [163], this Court rejected US Beverage's argument that Sellers' claims should be dismissed because she did not designate an expert to support her claims.

Now, US Beverage seeks dismissal of Sellers' common law claims on the basis that they are subsumed by the Mississippi Products Liability Act ("MPLA"). US Beverage also requests that the Court bar Sellers from recovering emotional distress damages, attorney's fees, and pre-judgment interest. Sellers contests some of US Beverage's requests and concedes others. The Court will address them separately.

*Standard*

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings. *See* FED. R. CIV. P. 12(c). "A Rule 12(c) motion may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on the substance of the pleadings and any judicially noted facts." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).

"A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Salts v. Moore*, 107 F. Supp. 2d 732, 735 (N.D. Miss. 2000). Accordingly, "[t]he central issue is whether,

2

in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *In re Katrina Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations omitted). Stated differently, "the issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims." *Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). The Court will "accept well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff, but . . . [will] not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id*. (citing *Ferrer*, 484 F.3d at 780).

*Analysis and Discussion*

The Court will first address US Beverage's contention that the common law claims are precluded by the MPLA and then turn to the arguments surrounding damages.

I.     *MPLA Preclusion*

As noted previously, Sellers' Amended Complaint [29] asserts three general causes of action—(1) negligence, (2) products liability, and (3) breach of warranties. US Beverage avers that the MPLA's exclusivity provision mandates dismissal of the negligence and breach of warranties claims. Additionally, US Beverage contends that to the extent the products liability claim includes an assertion that strict liability should be imposed, that claim is due to be dismissed.

The Court begins with the relevant language of the MPLA:

> Subject to the provisions of Section 11-1-64, in *any action* for damages caused by a product, including, but not limited to, *any action based on a theory of strict liability in tort, negligence or breach of implied warranty*, except for commercial damage to the product itself:
>
> (a)     The manufacturer, designer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer, designer or seller:

3

>> (i)
>>
>> > 1. The product was defective because it deviated in a material way from the manufacturer's or designer's specifications or from otherwise identical units manufactured to the same manufacturing specification, or
>> >
>> > 2. The product was defective because it failed to contain adequate warnings or instructions, or
>> >
>> > 3. The product was designed in a defective manner, or
>> >
>> > 4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
>>
>> (ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and
>>
>> (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

MISS. CODE ANN. § 11-1-63(a) (emphasis added).

Describing the effect of the MPLA's exclusivity language, the Mississippi Supreme Court has held:

> In interpreting and applying the MPLA, we have explained that the MPLA provides the exclusive remedy for products-liability claims, and since the enactment of the MPLA, products-liability claims have been specifically governed by statute, and a claimant, in presenting his case, must pay close attention to the elements of the cause of action and the liability limitations enumerated in the statute. *In other words, the MPLA has abrogated products-liability claims based on strict-liability or negligence theories, and the MPLA now provides the roadmap for such claims*.

4

*Elliot v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015) (quoting *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1027, 1027 (Miss. 2011); *Williams v. Bennett*, 921 So.2d 1269, 1273 (Miss. 2006)) (internal quotation marks omitted; emphasis added).

Relying on the Mississippi Supreme Court's language, US Beverage contends that "any non-MPLA claims for breach of implied warranty, fraudulent misrepresentation, negligence, or strict liability against manufacturers, designers, and sellers of products are no longer viable." [166] at p. 6. In response, Sellers does not argue against the applicability of the MPLA but takes the position that "[w]hile these claims do not provide an independent basis for the recovery of damages, the allegations made in these sections of the [Amended Complaint] are relevant and material to the proof Ms. Sellers may present at trial in support of her MPLA claim." [168] at p. 4.

As these excerpts indicate, the parties do not dispute the MPLA's applicability or its exclusivity, but their positions diverge as to what impact the exclusivity has on Sellers' claims.

This Court previously addressed this issue in *Young v. Bristol-Myers Squibb Co.*, 2017 WL 706320 (N.D. Miss. Feb. 22, 2017). There, the plaintiff (Young) filed suit for injuries and damages she sustained after ingesting Farxiga, a drug that was researched, developed, sold, and/or marketed by the various defendants in the case. *Id*. at *1. In her complaint, Young asserted claims for strict liability, manufacturing defect, design defect, failure to warn, negligence, breach of warranties, negligent misrepresentation, fraud, and violations of consumer protection laws. *Id*. at *3. The defendants sought dismissal of Young's common law claims for strict liability, negligence, breach of implied warranty, negligent misrepresentation, and fraud on the basis of MPLA exclusivity. *Id*.

This Court held that "[c]ommon law claims for damages caused by a product which seek to impose liability outside the MPLA's framework must be dismissed for failure to state a claim. .

5

. Practically, where a common law claim is subsumed by the MPLA and is brought alongside products liability claims based on the same theory of recovery, the proper course is to dismiss the common law claim to the extent it is duplicative of the parallel products liability counts." *Id*. at *3-4. The Court then addressed each of the claims separately and dismissed them as duplicative to the extent that they were based upon products liability and dismissed them for failure to state a claim to the extent that they were asserted as independent torts. *Id*. at *4-5.

Sellers contends that the Court need not dismiss the claims as duplicative but, rather, that the claims must simply be analyzed through the lens of the MPLA. She points to a 2018 decision from the District Court for the Southern District of Alabama wherein that court, applying Mississippi law, concluded as follows when confronting this issue:

> Defendants' threshold argument is that all of these claims are precluded by the [MPLA], which applies to "any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, negligence or breach of implied warranty, except for commercial damage to the product itself." Miss. Code § 11-1-63. Substantial case law supports defendants' position that the MPLA applies to the claims raised by [the plaintiff]. That said, courts confronting Mississippi common-law claims similar to those asserted by [the plaintiff] have not found that such claims must be summarily dismissed (as defendants here advocate); rather, courts have deemed such claims to be subsumed by, analyzed under, and subject to the requirements of the MPLA. *See, e.g., Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015).

*Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1203 (N.D. Ala. Sept. 14, 2018) (additional citations omitted).

The Court recognizes the distinction that the parties make and, candidly, the lack of clarity in the case law surrounding the issue. But the Court finds that the distinction is largely one without a difference. The statute is clear that whatever claims are asserted must be analyzed pursuant to the MPLA.

6

Therefore, Sellers' claims, to the extent that they are asserted as common law claims outside the scope of the MPLA, must be dismissed. *See Elliott*, 181 So. 3d at 268-69. The difficulty here is the broad scope of the allegations contained within the portions of Sellers' Amended Complaint [29]. For instance, her negligence claim includes allegations against US Beverage for failure to adequately inspect its facilities and equipment, failure to train and supervise employees, and failure to maintain quality control, among others.

Some portions of the claim exceed the scope of the MPLA. For instance, to the extent she asserts a theory of liability for failure to train or supervise, she clearly exceeds the purview of the MPLA. *See Elliott*, 181 So. 3d at 269. As Sellers concedes, those claims "do not provide an independent basis for the recovery of damages[.]" [168] at p. 4. The Court finds that to be correct.

However, the Court does not find it appropriate to altogether dismiss Sellers' negligence or breach of warranties claims. The statute itself does not mandate dismissal of the claims but rather makes clear that the claims can only be proven by establishing the elements set forth therein. In other words, regardless of how the claim is labeled, recovery can only be had by proving the elements set forth in the statute. The Court intends to instruct the jury in that regard.

To the extent the Amended Complaint [29] asserts claims beyond the purview of the MPLA as an independent basis for recovery, US Beverage's Motion [165] is GRANTED and the claims are dismissed. The Motion [165] is DENIED in all other regards. As noted above, the Court will carefully instruct the jury as to the applicable standard for Sellers' claims.

II.     *Damages*

US Beverage contends that the Court should dismiss Sellers' claims for emotional distress, attorney's fees, and pre-judgment interest. Two of the three can be easily resolved. In her Response Memorandum [168], Sellers agrees there is no basis for an award of attorney's fees or pre-

7

judgment interest in this case. To the extent US Beverage seeks dismissal of such damages claims, the request is GRANTED.

Whether Sellers has substantiated her claim for emotional distress is disputed. The premise for US Beverage's request is straightforward—it alleges that Sellers has "failed to produce sufficient evidence to support her claims for damages as to emotional distress and mental anguish." [166] at p. 10. According to US Beverage, Sellers has only come forward with conclusory statements that she suffered emotional distress, which falls below the requisite threshold for this type of damages.

The Mississippi Supreme Court has held that "a plaintiff . . . may not recover emotional distress damages resulting from ordinary negligence without proving some sort of physical manifestation of injury or demonstrable physical harm." *Wilson v. General Motors Acceptance Corp.*, 883 So.2d 56, 65 (Miss. 2004) (quoting *American Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1209 (Miss. 2001)). In *Wilson*, the Mississippi Supreme Court held that the plaintiff's trial testimony as to loss of sleep was insufficient to support an award of emotional distress damages. *Id*. at 64-65.

In the case at bar, Sellers provided the following sworn response to a propounded interrogatory concerning the incident:

> My stomach dropped and I immediately began to feel extremely ill and horrified. . . . At that point the nausea and horror overtook me and I pushed back from the table and sprinted out of the conference room and into the bathroom. I stood over the toilet vomiting, hyperventilating, and sobbing for several minutes, trying not to have a panic attack.

[165], Ex. 1 at p. 7.

The Court struggles to see how this testimony, if accepted by the jury, would be insufficient to support an award for emotional distress damages. Sellers' alleged emotional damages, which include physical manifestations of injuries in the form of vomiting and hyperventilating, go far beyond the loss of sleep testimony that the Mississippi Supreme Court concluded was insufficient in *Wilson*. The Court finds that she has come forward with sufficient evidence to support her claim for emotional distress damages for summary judgment purposes.

To the extent US Beverage seeks dismissal of Sellers' claim for emotional distress damages, the request is DENIED.

*Conclusion*

For the reasons set forth above, US Beverage's Motion [165] is GRANTED IN PART AND DENIED IN PART.

SO ORDERED, this the 14th day of May, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE